IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SYBIL MARIE LITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:15-cv-659-MHT-GMB |
| | ) | |
| COMPUTER SCIENCES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 5. Plaintiff Sybil Marie Little filed this action on September 15, 2015, alleging employment discrimination on the basis of her gender. Doc. 1. Now before the court are the Motion for Summary Judgment (Doc. 40) and Motion to Strike Exhibits of Plaintiff Submitted in Response to Summary Judgment (Doc. 49) filed by Defendant Computer Sciences Corporation ("CSC").[1] After careful consideration of

---

[1] On March 29, 2016, Little filed a motion for leave to amend her complaint to add CSRA, Inc. ("CSRA") as a defendant. *See* Doc. 21. The court granted Little's motion, *see* Doc. 23, but Little did not file an amended complaint. Instead, she retained the services of an attorney, who filed a motion for leave to file a second amended complaint (despite the fact that Little had never filed a first amended complaint). *See* Doc. 26. This motion was granted, *see* Doc. 27, and Little filed the Second Amended EEOC Complaint and Jury Demand on May 17, 2016, which is now her operative pleading. *See* Doc. 28. On November 30, 2015, CSC's North American Public Sector merged with SRA International to form CSRA. Doc. 42-3 at 2. At that point, Little became an employee of CSRA. Doc. 21. However, at all times relevant to Little's claims in this lawsuit, she was an employee of CSC, not CSRA. Moreover, Little's Second Amended Complaint did not name CSRA as a defendant in the caption despite a stray reference to CSRA in the body, *see* Doc. 28 at 2, and CSRA has not been served with process. Thus, CSRA was never made a proper defendant to this action, and any claim purportedly asserted against it would be due for summary judgment.

the parties' submissions, the applicable case law, and the record as a whole, the undersigned RECOMMENDS that the motion for summary judgment and motion to strike be GRANTED, and that all claims asserted by Plaintiff Sybil Marie Little be DISMISSED with prejudice.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 42 U.S.C. § 2000e-5(f)(3). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (internal quotation marks omitted).

If the nonmoving party's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249−50 (1986) (citations omitted). "However, disagreement between the parties is not significant unless the disagreement presents a genuine [dispute] of material fact." *Gamble v. Pinnoak Resources, LLC*, 511 F. Supp. 2d 1111, 1122 (N.D. Ala. 2007) (internal quotation marks omitted). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a district court considers a motion for summary judgment, all evidence and inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). "The court must avoid weighing conflicting evidence or making credibility determinations. Instead, the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Gamble*, 511 F. Supp. 2d at 1122 (internal quotation marks omitted). "Where a reasonable fact finder may draw more than one inference from the facts, then the court should refuse to grant summary judgment." *Id.* (internal quotation marks omitted).

### III. STATEMENT OF FACTS

Little is a 46-year-old white female who is married and lives with her husband and two children in Jack, Alabama. Docs. 1-1 at 5 & 42-1 at 4. CSC first hired Little in 2006 as a Simulator Technician II at the United States Army post at Fort Hood, Texas. Doc. 42-1 at 15. As a simulator technician, Little maintained and repaired flight simulators. Her

job functions included "installing, replacing, and maintaining electrical systems, apparatus, components of machinery, and equipment." Doc. 42-1 at 188. In this position, Little did not serve in a managerial role, and instead performed maintenance as directed by supervisors and higher-level technicians. Doc. 42-1 at 15 & 188. In June of 2010, Little transferred from Fort Hood to Fort Rucker, Alabama, because her husband was relocated there. Doc. 42-1 at 31–32.

At Fort Rucker, Little applied for an Electronics Technician, Maintenance II position in the Aviation Combined Arms Tactical Trainer group, and was interviewed by CSC's Fort Rucker Operations Manager, Dave Jones. Docs. 42-1 at 204 & 42-3 at 2–3. Jones selected Little over several other candidates, some of whom were male. Doc. 42-3 at 3. This position encompassed similar duties to Little's prior position, but carried a pay increase without requiring her to serve in a managerial or supervisory capacity. Doc. 42-1 at 32 & 206. Specifically, the position required "technical knowledge to solve complex problems" and a "familiarity with the interrelationships of circuits and judgment in planning work sequence and in selecting tools and testing instruments." Doc. 42-1 at 74.

According to Jones, Little's performance in this position was unsatisfactory. Doc. 42-3 at 3. Her work group was small—only two employees—and isolated from other groups, requiring its technicians to be "highly proficient and self-sufficient." Doc. 42-3 at 3. In this environment, Little was "unable to reliably work without assistance and/or supervision, and she was the subject of several issues and complaints." Doc. 42-3 at 3; *see* Doc. 42-3 at 14. However, rather than terminate Little for poor performance, on October 30, 2010, Jones transferred her to a Simulator Technician II position in the Longbow Crew

Trainer group, where she would have greater support and would be "more likely to succeed." Doc. 42-3 at 3.

In addition to her standard job duties, Little served in the role of "safety liaison" both at Fort Hood and after her transfer to Fort Rucker. Doc. 42-3 at 4. As safety liaison, Little was assigned certain tasks related to safety but did not have a different job title or receive additional compensation. Doc. 42-3 at 4. Jones appointed Little as safety liaison at Fort Rucker because of her previous safety experience at Food Hood. Doc. 42-3 at 4. The safety liaison is not a separate position. Doc. 42-3 at 3–4 & 60. Little contends that it is a managerial position, while Jones disagrees and notes that "safety duties have been entrusted to both supervisor and non-supervisor employees." Doc. 42-3 at 4.

In February of 2014, Little applied for the Shadow Crew Trainer Electronics Technician III position and was again interviewed by Jones. Docs. 42-1 at 49 & 42-3 at 8. The person selected for this job would be the only maintenance technician for this particular platform on the East Coast and would have to travel to multiple sites on short notice. Doc. 42-3 at 8. Therefore, the position required "travel on short notice, unpredictable work hours, and the ability to work effectively without supervision." Doc. 42-3 at 8. The job duties would include the maintenance, repair, and installation of various types of electronic equipment, necessitating "advanced technical knowledge to solve unusually complex problems that typically cannot be solved solely by referencing manufacturers' manuals or similar documents." Doc. 42-2 at 117. The minimum qualifications were an associate degree, military electronics technical training or equivalent training and experience, and a minimum of five years of competent electronic maintenance

experience. Doc. 42-2 at 117. Before her interview for the Shadow Crew Trainer Electronics Technician III position in February of 2014, Little had obtained a bachelor's degree in occupational safety and health, and her resume highlighted "7 years of experience in Health, Safety, and Environmental analyses," which included service as a safety liason, implementing and coordinating employee safety programs, performing accident investigations, and developing workplace safety policies. Doc. 42-3 at 23 & 38. Her professional experience included several years as a maintenance technician for CSC and two other companies. Doc. 42-3 at 21–23 & 38. She also possessed an associate degree and several certificates. Doc. 42-3 at 23–38.

After considering Little, Jones announced on March 10, 2014, that he selected JoAnn Sullivan for the position. Doc. 42-3 at 8. Sullivan is an electrical engineer and holds a Ph.D. in geography and environmental science and policy, with more than 15 years of relevant experience at the time she was selected. Doc. 42-3 at 8 & 51–71. Having worked as an engineer for Boeing and Lockheed Martin, Sullivan had an extensive background in aviation science. Doc. 42-3 at 51–60. In addition to concluding that Sullivan was more qualified for the position than Little on the basis of her credentials, Jones rated Sullivan's performance in the interview higher than Little's because Sullivan demonstrated that she had previously built, used, and repaired the very circuit boards that she would be tasked with maintaining. Doc. 42-3 at 8–9. Little asserts that Sullivan is actually a man named "Joseph," who presented as male at the interview despite ordinarily presenting as female in work settings. Doc. 42-1 at 7–8. According to Jones, Sullivan represented that she was a woman in both the application and interview process and during the course of her duties.

Doc. 42-3 at 9.  While he has no personal knowledge of Sullivan's gender, Jones believed, based on his interactions with Sullivan, that both her gender and gender identity were female. Doc. 42-3 at 9.

Ultimately, Sullivan suffered an injury and left the Shadow Crew Trainer Electronics Technician III position after three months, so the opening was posted on June 18, 2014 through CSC's online careers portal. Doc. 42-3 at 9.  Jones interviewed two males for the position: John Farmer and Eric Lasseter. Doc. 42-3 at 10.  On August 15, 2014, Jones selected Farmer for the position. Doc. 42-3 at 10.  On August 19, Jones received an email from Little stating that she had applied for the position. Doc. 42-3 at 10.  In fact, Little had submitted an online application on August 18, three days after Jones selected Farmer. Doc. 42-3 at 10.  She was able to submit an application only because the online posting remained open until Farmer cleared CSC's human resources screening process. Doc. 42-3 at 10.  Had Farmer declined the position or failed the screening process, Jones would have considered Little's application; however, Farmer passed screening, accepted the position, and the posting was removed on August 20. Doc. 42-3 at 10.  According to Jones, even if Little had submitted her application in time, he would not have selected her over Farmer because of Farmer's superior credentials and extensive relevant experience. Doc. 42-3 at 10–11.

On September 15, 2014, Little filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  In the charge, Little alleged that she was not selected for the Shadow Crew Trainer Electronics Technician III position in both March and August of 2014 on the basis of her gender. Doc. 1-1 at 5.  The EEOC informed

Little that her allegations arising out of Jones' selection of Sullivan in March of 2014 were not timely. Doc. 42-2 at 115. The EEOC could not conclusively determine whether Little's August 2014 claim had merit, and it issued a right-to-sue letter on June 23, 2015.

Jones was solely responsible for the decision to hire Sullivan in March of 2014 and Farmer in August of 2014. Doc. 42-3 at 11. He maintains that Little's gender was not a factor in his decision, and that both Sullivan and Farmer were more qualified than Little and the other candidates. Doc. 42-3 at 11. Little acknowledges that she is not aware of any other facts indicating that Jones impermissibly considered her gender in the process of making any personnel decision. Doc. 42-1 at 64–65.

## IV. DISCUSSION

### A. Motion to Strike

In framing the summary-judgment inquiry, the court first must address CSC's motion to strike certain exhibits Little submitted in response to its summary-judgment motion. *See* Doc. 49. Little filed what is styled as a "Motion in Opposition of Defendant's Motion for Summary Judgment." Doc. 48. This filing consists of a collection of documents, including two sworn statements by Little, interrogatory responses, and other documents such as the EEOC charge, an employment application, and a copy of CSC's summary-judgment brief. Doc. 48. CSC moved to strike the two sworn statements and the interrogatory responses. Because the court concludes, for the reasons below, that the motion to strike is due to be granted, the court will not consider any facts for which the only evidentiary support is Little's sworn statements (Doc. 48-2) or unverified

interrogatory responses (Doc. 48-3).[2]

### 1. Sworn Statements

In responding to a summary-judgment motion, the nonmoving party may rely on sworn pleadings, including affidavits, declarations, and interrogatory answers. *See* Fed. R. Civ. P. 56(c). Thus, whether the two statements (Doc. 48-2) are considered sworn declarations or affidavits has no impact on the court's consideration of them in the summary-judgment context. However, affidavits and declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Evidence that does not comply with the requirements of Rule 56(c)(4) may be subject to a motion to strike. *Short v. Mando Am. Corp.*, 805 F. Supp. 2d 1246, 1265 (M.D. Ala. 2011). Little's statements fall short of Rule 56(c)(4)'s requirements.

Evidence is admissible under Federal Rule of Evidence 402 only if it is relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Little's statements include many facts and events well outside the timeframe of the alleged adverse employment decisions. For instance, Little describes events that occurred in 2007 at Fort Hood, years before she was employed by CSC at Fort Rucker—and which would not give rise to a timely claim in this suit. Doc. 48-2 at 1–2.

---

[2] Even if the facts set forth in the sworn statements and interrogatory responses had been considered, they would not have had a meaningful impact on the court's summary-judgment analysis in as much as they contain no substantial evidence of pretext sufficient to rebut CSC's proffered legitimate, non-discriminatory reasons for the two employment decisions at issue in this lawsuit.

Likewise, Little references events at Fort Rucker that occurred years before Jones' decisions to select Sullivan and Farmer over Little and that have no connection to those decisions. Doc. 48-2 at 2–3. Little also vaguely references interactions and conversations she has had with other CSC employees, including alleged supervisors. Doc. 48-2 at 3–4. Many of these conversations occurred after Little filed her charge of discrimination, and indeed after she filed this lawsuit. Doc. 48-2 at 3–4.

The rest of the factual content of the statements relates to topics and events that are not of consequence to the claims in this lawsuit, have no apparent connection to Jones' decision not to promote Little, or do not suggest that Jones' decision was based on Little's gender. For example, Little alleges that two CSC employees, Jason Patrick and Rickey Norris, sexually harassed her. Even assuming these allegations are true, these employees were not involved in the March 2014 and August 2014 promotion decisions and Little does not otherwise connect this conduct to the decision not to promote her. Doc. 48-2 at 3–5. Little also does not provide the dates for many of these alleged instances. Even for those that are placed on a timeline, they are described as occurring in 2016, well after Little filed suit. Doc. 48-2 at 4 ("Rickey Norris has further told me on July 13, 2016; [sic] I should wear heels to work not dress flat shoes as it would get men's attention and I would receive favourable [sic] responses which I also said I would not do."). She also alleges that Patrick sexually harassed two other female CSC employees, and opines in great detail on the shortcomings of the safety program at Fort Rucker. Doc. 48-2 at 3, 5–6 & 12. In summary, Little's statements are a mishmash of generalized and specific allegations of wrongdoing from approximately 2007 until 2016. However, Little does not demonstrate, nor even

allege, how these transgressions are tied to Jones' hiring decisions. In this light, the factual content of Little's statements cannot be viewed as relevant and material to the issues in dispute in this litigation.

In addition to their irrelevance, Little's statements also contain a number of factual assertions without any apparent personal knowledge or foundation of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). Many are speculation about the content of other employees' conversations, other employees' qualifications, and the reasoning behind personnel decisions. For example, Little claims that a position "recommended" to her was "given to a male in order to not lay off a person as his position was going away." Doc. 48-2 at 12. Little does not explain how she has personal knowledge of the rationale underlying the promotion of this unidentified male or about the details of his prior position. Of course, as is the case with many of Little's assumptions, the statement is of little probative value without identification of the position at issue, the timing of the incident, or the connection between this allegation and Jones' decision not to promote Little in March and August of 2014.

As another example, Little discusses a "supervisor position" for which she was allegedly passed over. While Little does not state the time period for this decision, the supplemental documents attached to her EEOC charge reveal that it may have occurred in 2011. *See* Doc. 1-1 at 9 ("In 2011 I applied for the LCT Supervisor position. I was not even given an interview for the position even though I qualified for the slot."). Of course, this allegation would not have given rise to a timely claim as it is well more than 180 days before the filing of Little's EEOC charge on September 15, 2014. Nevertheless, Little

asserts:

> When the Longbow Crew Trainer Supervisor position initially came available the company hired a male technician which [sic] worked overseas in order for him to come back from overseas. Bret Borner was not wanted back at Fort Hood due to employee issues and personal issues involving law enforcement. Rickey Norris was the next choice. Rickey Norris did not have a college degree either and had multiple complaints against him by Sara Fryman-Smolinski. I complained about the choice of Rickey Norris because I had also put in for the position, [sic] I had a Bachelor Degree graduating with Cum Laude Honors.

Doc. 48-2 at 7. Little does not explain the basis for her personal knowledge of these employees' educational attainment, criminal records, and personnel records. Further, she does not provide any information regarding her knowledge of the reasons for this particular personnel decision. While the statement would be of limited to no probative value in any event because it does not give rise to a timely Title VII claim and is not reasonably related to the two promotion decisions at issue in this lawsuit, it is emblematic of the lack of foundation for Little's statements. CSC's motion to strike the two sworn statements is due to be GRANTED.

### 2. *Interrogatory Responses*

In addition to the sworn statements, Little submitted unverified discovery responses in opposition to CSC's motion for summary judgment. *See* Doc. 48-3. Rule 33 of the Federal Rules of Civil Procedure requires interrogatory requests to "be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Thus, unverified answers to interrogatories cannot be considered on a motion for summary judgment. *See, e.g.*, *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) ("Unsworn statements do not meet the requirements of [Rule 56] and cannot be considered by a district court in ruling on a

summary judgment motion.") (internal quotation marks omitted); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 466–67 (M.D. Fla. 2008) ("Rule 33 is commonly interpreted as requiring all interrogatory answers, whether initial or supplemental, to be signed under oath."). Accordingly, CSC's motion to strike Little's unverified interrogatory responses is due to be GRANTED.

**B.    The Scope of the Complaint**

Having ascertained the proper factual basis for the summary-judgment inquiry, the court next turns to the scope of the claims under consideration. Prior to filing a lawsuit for employment discrimination under Title VII of the Civil Rights Act of 1964, "a plaintiff must first file a charge of discrimination with the EEOC." *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). It is well established that a plaintiff's federal-court complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280 (citation and internal quotation marks omitted). In this vein, allegations in a civil complaint are permitted to the extent they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint," but allegations of new acts of discrimination are prohibited. *Id.* at 1279–80 (citation and internal quotation marks omitted).

Little's Second Amended Complaint includes allegations of discrimination that are beyond the scope of her EEOC charge of discrimination. In the charge, Little referenced two instances of alleged discrimination: the promotion decisions occurring on March 10, 2014 and August 19, 2014. Doc. 1-1 at 5. On both dates, Little claims that she was passed over for a promotion on the basis of her gender. Doc. 1-1 at 5. The task before the court,

then, is to determine which allegations in her Second Amended Complaint could be characterized as amplifying, clarifying, or more clearly focusing the conduct subject to the EEOC charge. In the supporting documents attached to the charge, Little described in some detail the two instances of alleged discrimination, but did not explicitly claim that any other discrimination occurred.[3] For instance, Little reflected on her interview with Jones in March of 2014, her employment history, and her experience as a safety liaison both at Fort Rucker and Fort Hood. Doc. 1-1 at 6–10. She did provide some insight into the circumstances surrounding Jones' decisions to select other candidates by, for example, contending that she was better qualified than Sullivan and alleging that she was told by an unidentified employee before her March 2014 interview that she would not be selected for the position. Doc. 1-1 at 9–10. In any event, nowhere—either in the charge itself or in the supporting documents—does Little point to any adverse employment action other than the March and August 2014 promotion decisions.

Little's Second Amended Complaint, on the other hand, includes the claim that she was discriminated against "on a continual basis beginning in the year 2010." Doc. 28 at 2. Although "the scope of an EEOC complaint should not be strictly interpreted," *Gregory*,

---

[3] Little references past "ethical" complaints against Jones in her EEOC charge. Doc. 1-1 at 6. She does so in the context of explaining why she was concerned that Jones would be conducting her interview for the potential promotion. *See* Doc. 1-1 at 6 ("There were several things that bothered me about the interview from past dealings with Dave Jones. I have made two past Ethical Violation [sic] complaints against Dave Jones with the company."). She also points to another promotion decision in 2011. Doc. 1-1 at 9 ("In 2011 I applied for the LCT Supervisor position. I was not even given an interview for the position even though I qualified for the slot."). To the extent any of these allegations could be considered discrete acts of discrimination asserted in Little's charge, they occurred far more than 180 days before the charge was filed, and would therefore not be timely. *See* 42 U.S.C.A. § 2000e-5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1178 (11th Cir. 2005).

355 F.3d at 1280 (citation and internal quotation marks omitted), an investigation arising out of two discrete occurrences of discrimination in 2014 plainly does not encompass allegations of continual discrimination since 2010. Far from amplifying or clarifying the information asserted in her EEOC charge, Little alleges new instances of discrimination in her Second Amended Complaint and subsequent evidentiary materials filed with the court. *See generally* Docs. 28 & 48.[4] The court cannot entertain such an impermissible expansion of the scope of this case. Accordingly, any claims in this lawsuit that do not reasonably relate to the March and August 2014 promotion decisions will not be considered. *See Gregory*, 355 F.3d at 1279–80 ("[A]llegations of new acts of discrimination are inappropriate.").

## C.    The March 10, 2014 Employment Decision

The first substantive claim that is properly before the court alleges that Jones failed to promote her in March 2014 because of her gender, and that he instead selected Sullivan, who was less qualified, believing that Sullivan was a man. Doc. 1-1 at 6. However, any claim of discrimination in March 2014 is untimely. EEOC claims arising in the State of Alabama must be filed within 180 days of the unlawful employment practice. 42 U.S.C.A. § 2000e-5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1178 (11th Cir. 2005). "Therefore, only those practices that occurred within 180 days of the operative EEOC charge can form the basis for Title VII liability." *Ledbetter*, 421 F.3d at

---

[4] Little's summary-judgment response on November 4, 2016 included a brief that was not electronically filed, *see* Doc. 48, but was included in a courtesy copy delivered to the chambers of the undersigned. Upon realizing the omission, Little electronically filed her response brief on April 4, 2017. *See* Doc. 57. Despite the delay, the court has considered Little's brief in the adjudication of the instant motion.

1178.  Little filed her EEOC charge on September 15, 2014, which is more than 180 calendar days after March 10, 2014.  Accordingly, this claim is barred by the statutory time limitation.

Little's allegation of continuing discrimination in her Second Amended Complaint may have been an attempt to sidestep this fatal flaw.  "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).  However, as already discussed, claims beyond the scope of her EEOC charge cannot be considered.  At any rate, a failure to promote is a discrete act to which the continuing violation doctrine does not apply.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002) (holding that a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period" in reversing the lower court's holding "that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability"); *Stuart v. Jefferson Cnty. Dept. of Human Res.*, 152 F. App'x 798, 800–01 (11th Cir. 2005) ("For [plaintiff's] claims to be timely, he was required to file his EEOC complaint within 180 days of each discrete employment decision.").  Thus, even the continuing violation doctrine cannot save Little's untimely claim.

Moreover, even if Little's claim related to the March 2014 promotion had been timely, CSC has produced sufficient evidence demonstrating that Sullivan's hiring was made for legitimate, nondiscriminatory reasons.  Sullivan is an electrical engineer who

holds a Ph.D. and had more than 15 years of relevant experience at the time she was chosen for the position. Doc. 42-3 at 8. Conversely, Little possessed a bachelor's degree at the time of the promotion with seven years of experience. Doc. 42-3 at 8–9. Therefore, even assuming Little has stated a *prima facie* case,[5] CSC has met its burden of demonstrating a legitimate, nondiscriminatory reason for Jones' decision to hire Sullivan by presenting evidence of Sullivan's superior education credentials and depth of experience. *See Brown*, 597 F.3d at 1174 (stating that, once the plaintiff demonstrated a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions"). The burden thus shifts back to Little to offer evidence that the alleged reason is a pretext for discrimination. *See id.* As discussed in more detail below, Little has offered no meaningful evidence of pretext beyond the fact of her gender and the failure to promote her, both of which were components of her *prima facie* case. Therefore,

---

[5] The Eleventh Circuit recently declared that "[i]n the failure-to-promote context, the *prima facie* case consists of showing these elements: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). Previously the court had explicitly held, in *Walker v. Mortham*, 158 F.3d 1177, (11th Cir. 1998), that a district court "erred in imposing as part of the prima facie case a requirement that each plaintiff establish that the successful applicant for his or her coveted position was less than or equally qualified to hold the position." *Id.* at 1193. *Brown* did not address—and certainly did not expressly overrule—*Walker*. As a result, arguably the law is unsettled as to whether a plaintiff bears the burden of proving, at the *prima facie* stage, that the other employee was equally or less qualified. *See Johnson v. AutoZone, Inc.*, 768 F. Supp. 2d 1124, 1144 n.129 (N.D. Ala. 2011) (engaging in a detailed discussion of the issue and citing *Walker* for the proposition that "the plaintiff need not introduce evidence regarding relative qualifications" at the *prima facie* stage). Until further guidance from the Eleventh Circuit, this court will join a number of its sister courts in requiring proof of only the first three factors articulated in *Brown. See, e.g., White v. Crystal Mover Services, Inc.*, 2014 WL 4662371, at *28–29 (N.D. Ga. June 24, 2014) (excluding from the plaintiff's *prima facie* burden the requirement of proving that he was equally or more qualified than the individuals who were chosen for the promotions he sought); *Johnson*, 768 F. Supp. 2d at 1144 n.129 (same).

even if not time-barred, Little's claim relating to the March 2014 promotion is due for summary judgment.

**D.    The August 19, 2014 Employment Decision**

Little's August 19, 2014 claim also is ripe for summary judgment.  As set out above, Jones selected Farmer on August 15, 2014. Doc. 42-3 at 10–11 & 81.  Little submitted her application on August 18, three days after the position was filled. Doc. 42-3 at 10.  Jones immediately notified Little that the position had already been filled, and Farmer was formally appointed to the position once he cleared screening by the human resources department. Doc. 42-3 at 10.  Of course, it is axiomatic that a plaintiff cannot demonstrate a *prima facie* failure-to-promote case where she cannot demonstrate that the promotion was available in the first place. *See Fodor v. Eastern Shipbuilding Group*, 2014 WL 1478845, at *9 (N.D. Fla. Apr. 15, 2014) (concluding that the plaintiff could not demonstrate a *prima facie* case where the undisputed evidence in the record showed that the position was not open when the plaintiff applied); *King v. ADT Sec. Services*, 2007 WL 2713212, at *15 (S.D. Ala. Sept. 17, 2007) (same).

However, even assuming for argument's sake that Jones had not already selected Farmer when Little applied, Jones maintains that Farmer—just like Sullivan—was significantly more qualified than Little. Doc. 42-3 at 10–11.  Farmer had 17 years of experience as a simulator maintenance technician compared to Little's eight years, and six years of information technology experience compared to Little's four. Doc. 42-3 at 10–11, 19–49 & 74–80.  Moreover, Farmer's extensive experience and technical expertise enabled him to troubleshoot issues remotely, "thereby eliminating the need and expense for travel

18

to the site." Doc. 42-3 at 11. Thus, even if Little has established a *prima facie* case, CSC has satisfied its burden of demonstrating a legitimate, nondiscriminatory reason for Jones' decision to select Farmer by pointing to his superior qualifications.

In response, Little has offered almost no competent evidence tending to demonstrate that the alleged reason is a pretext for discrimination. To show pretext, the plaintiff "must meet [the employer's stated] reason head on and rebut it, and . . . cannot succeed simply by quarreling with the wisdom of that reason or by showing that the decision was based on erroneous facts." *Marable v. Marion Military Inst.*, 595 F. App'x 921, 925 (11th Cir. 2014) (internal quotation marks omitted). She may do this by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Champ v. Calhoun Cnty. Em. Mgmt. Agency*, 226 F. App'x 908, 913 (11th Cir. 2007) (internal quotation marks omitted). Here, the sum total of Little's evidence of pretext is contained in a statement attached to her EEOC charge. Doc. 1-1 at 10. In this statement, Little claims that, in August 2014, before she applied for the position that ultimately went to Farmer, Jones "told the men that if any of them applied and wanted the position it was their position. I was not given this option." Doc. 1-1 at 10. The record before the court does not identify the "men" in question and does not provide any other details relating to this allegation, as this statement is not discussed in Little's deposition or elsewhere in the record. In addition to this vagueness, Little does not identify the source of her second-hand summary of Jones' comments. This omission is particularly problematic, as Little's lack of personal knowledge of Jones' statement combines with its

apparent inadmissibility to remove this statement from the universe of factual content properly considered at the summary-judgment stage. *See* Rule 56(c); *United States v. Pendas-Martinez*, 845 F.2d 938, 942–43 (11th Cir. 1988) (excluding hearsay within hearsay even where—as here, with Jones' 801(d)(2) statement—one level is non-hearsay by definition under Fed. R. Evid. 801(d)).

At any rate, even if the court considers this single stray remark, and draws the inference that it evidences discriminatory intent, this alone is insufficient for a reasonable factfinder to conclude that Jones' stated reasons for selecting Sullivan in March 2014 and Farmer in August 2014 were false, inconsistent, or contradictory. *E.g.*, *Scott v. Suncoast Bev. Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002) (finding that a supervisor's discriminatory statement, "standing alone, is insufficient to create an issue of fact on pretext"). At best, the record demonstrates that Little simply disagrees with the wisdom of Jones' decisions and subjectively believes that she should have been promoted. But "quarreling with the wisdom" of an employer's decision, without producing evidence to rebut the employer's legitimate, non-discriminatory reason for that decision, is not enough to establish pretext. *See Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.") (citation and internal quotation marks omitted).

Moreover, the record does not reveal circumstantial evidence creating "a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*,

644 F.3d 1321, 1328 (11th Cir. 2011). A triable issue exists if "the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (citation and internal quotation marks omitted). Little has not directed the court's attention to any evidence in the record relevant to her claims that approaches a "convincing mosaic of circumstantial evidence." In fact, as discussed above, Little offers effectively no competent circumstantial evidence connecting Jones' personnel decisions to her gender. Accordingly, there is no genuine dispute of material fact relating to CSC's failure to promote Little in March 2014 and August 2014, and CSC is due summary judgment as to both claims. *See Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 967 (11th Cir. 2012) (affirming a district court's grant of summary judgment where the plaintiff was unable to present evidence rebutting the defendant's proffered justifications for its decision beyond conclusory allegations); *Chandler v. Volunteers of Am., Se., Inc.*, 126 F. Supp. 3d 1216, 1229 (N.D. Ala. 2015) (granting defendant's motion for summary judgment where plaintiff was unable to tie the employment decision at question to his protected class).

## VI. CONCLUSION

For the reasons stated above, the undersigned Magistrate Judge RECOMMENDS that the motion for summary judgment (Doc. 40) and motion to strike (Doc. 49) be GRANTED, and that all claims asserted by Plaintiff Sybil Marie Little be DISMISSED with prejudice.

It is further ORDERED that the parties are DIRECTED to file any objections to the

report and recommendation **not later than May 12, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 28th day of April, 2017.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE